*In re* ESTATE OF DAGNEY SEVERSON, Deceased.—(FIRST NATIONAL BANK AND TRUST COMPANY OF ROCKFORD, Ex'r of the Estate of Dagney Severson, Appellee, *v.* EVA SEVERSON, Appellant.)

Second District No. 81-730

Opinion filed June 23, 1982.

Warren H. Larson, of Street and Larson, of Rockford, for appellant.

Robert J. Oliver, of Connolly, Oliver, Goddard, Coplan and Close, of Rockford, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The will of Dagney Severson, deceased, admitted to probate, left the entire estate to the Moody Memorial Church of Chicago; and named the First National Bank & Trust Co. of Rockford as executor. Eva Dobson was declared to be the niece and sole heir at law of the decedent, based

upon her affidavit of heirship offered by the executor. Dobson then filed suit to contest the will. The trial court, on the executor's motion in the probate proceedings based on discovery, vacated the previous order of heirship and declared the heirs of Dagney Severson to be unknown. Dobson appeals, contending that the trial court improperly placed the burden of proof of the amended heirship on her, erroneously admitted several documents; and further claims that the findings were against the manifest weight of the evidence.

■■ Dobson's first contention is that, once the court entered an order of heirship based on her affidavit, the order was *prima facie* evidence of heirship which shifted the burden of persuasion to the executor to prove the negative, that is, that Dobson was not the heir. We do not agree.

■■ ■ The statute provides that while the order of the court declaring heirship is *prima facie* evidence of the heirship "any other legal method proving heirship may be resorted to by any party interested * * *." (Ill. Rev. Stat. 1979, ch. 110½, par. 5—3(c).) A proceeding for proof of heirship is purely statutory, is informal, and no provision is made for an answer or any pleadings. (*Sebree v. Sebree* (1920), 293 Ill. 228, 235.) In the absence of formal pleadings, the general rules of evidence, including the burden of proof, apply in such proceeding. (See 1 Horner, Probate Practice in Estates sec. 205, at 361 (4th ed. 1976).) As in any civil proceeding, the burden of proof in an heirship controversy rests with the party claiming heirship, because the claimant is asserting the affirmative issues. See *Lewandowski v. Zuzak* (1922), 305 Ill. 612, 618; *Hunt v. Morris* (1932), 266 Ill. App. 18, 23.

■■ Generally, *prima facie* means nothing more than " 'at first sight' " or " 'so far as can be judged from the first disclosure' " or " 'presumably' " or " 'without more.' " (*Chicago v. Hertz Commercial Leasing Corp.* (1978), 71 Ill. 2d 333, 340.) It has been recommended that the term *"prima facie evidence"* when used in a statute should be interpreted to establish only a "presumption" which affects only the burden of producing evidence. E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 302.8, at 76 (3d ed. 1979); see also *Diederich v. Walters* (1976), 65 Ill. 2d 95, 102.

In her affidavit of heirship Dobson stated that the decedent Dagney was one of three children of Bernt Severson and his wife, Christine Hansen [*sic*] Severson, both of whom predeceased the decedent; that decedent's sister Helga Severson predeceased the decedent, having never married and leaving no child surviving; and that decedent's brother Harald Severson also predeceased the decedent, leaving Eva Dobson as his sole heir at law. At the hearing on the motion to amend the heirship it was stipulated on behalf of Dobson that if Mrs. Marjorie Stibb testified, she would have said that she knew the decedent for 45 years, that Dagney

had told her that she had a brother who lived in Rockford but was now deceased, who had a daughter, Eva Dobson.

The executor denied that the decedent was the sister of Harald, Dobson's father, and produced the testimony of Sam F. Fink, a genealogical investigator, who had been appointed by the court on the executor's motion. He had the death certificate of decedent upon which Dobson was the informant and in which Dobson named "Berndt Severson" and Kristine Hansen" (maiden name) as Dagney's father and mother. In her later deposition she stated the mother's name was actually Kristine Pedderson. Dagney's birth date was stated to be December 16, 1888, in Norway. Fink went to Oslo, Norway, the birthplace of Dobson's father, where he collected copies of various documents which, along with other documents obtained in the United States, formed the basis of his report to the court.

The death certificate of Harald Severson, Dobson's father, indicates his birth date as October 8, 1885, in Norway and the date of his death as June 25, 1932, and the names of his parents as "unobtainable." His naturalization papers list his birth date as October 8, 1880, at Christiana, Norway, and his date of arrival in the United States as June 29, 1901. His marriage certificate discloses that he was born October 8, 1880, at Barum (Oslo) Norway to "Bernt Syversen" and "Lise Olava Syversen (born) Olsen." His immigration papers indicate that he sailed for the United States on the ship Helga on June 11, 1901.

The marriage record of Bernt Seversen and Lisa Olava Olsen states that they were married on July 7, 1878. The 1891 Oslo census shows the family was headed by Bernt and included Lisa Olava as his wife, and four children in addition to Harald (b. 1880): Laura Amalie (b. 1878), Borghild Sofie (b. 1883), Helga (b. 1887) and Birgitte Ovida (b. 1889). The deceased, Dagney Severson, is not listed in the 1891 census as a part of the Bernt Seversen household. In addition to Harald's birth certificate, Fink located the birth certificate of Borghild, Helga, and Birgitte at a parish church where Helga and her husband were buried. No birth record for Dagney was found at that parish.

The death certificate of Bernt's wife, "Lise Olava Oldsdaughter Syversen" bears the date of death of October 15, 1892. Bernt's death certificate indicates he died on December 4, 1929.

The census for 1900, by which time Lisa Olsen had died, lists Bernt Severson as head of the household and Harald, Birgitte, and Helga as children. It lists Kristine Severson (b. 1862 in Sweden) as wife and Dagney Severson (b. 1888 in Kristiania (Oslo)) as a daughter. However, Fink searched for but could not find a marriage license for Bernt and Kristine. He testified that Norway did not have laws on adoption until 1917.

The decedent wrote to her attorney in a letter of May 22, 1974, that:

> "* * * You would like to have a list of the names of my relatives. My parents are dead and I have no brothers or sisters or any other relation. Have never been married.
> * * *
> Well I had a cousin in Sweden which I haven't seen since we were 8 years old. Don't know if she is living or where she live [*sic*]. I hope this takes care of it."

(This letter was the basis of the will contest on the theory that Dagney did not know her relatives, and, thus, suffered from an insane delusion.)

Dagney Severson's naturalization papers state that she was born on December 16, 1888, in Oslo, that her last foreign residence was Hovik Verk, and that she emigrated to the United States on the S.S. C.R. Tietgen on August 27, 1907. The shipping list for the C.R. Tietgen showed that the ship sailed on August 13, 1907, and listed "Dagney Sofie Syversen Svendsen" born December 16, 1888, hometown, Hovik. Fink also located her application for a United States social security number, dated August 4, 1937, in which she gave her name as "Dagney Sophie Severson" born December 16, 1888, in Oslo, and the names of her parents as Bernt Severson and Christine Petterson. Fink also obtained from the Department of Labor, Immigration and Naturalization Services a copy of the letter of Dagney Severson, dated September 13, 1938, which was sent in response to a letter from Severson regarding her petition for citizenship. The letter in part states that "[i]t is possible you should have given your real father's name as of the time you filed your application and petition for citizenship."

Additional testimony by Fink related to documents located in Norway at a hospital which contained a church. These purported to show a church book entry relating to a "Dagny Sofie" (no last name) for the year 1888 listing as parents "Samuel Svendsen" and "Kristina Pettersen" (Exhibit No. 29). In 1980 he was also furnished a certified copy of a birth record which apparently was based on and prepared from the church record, showing that "Dagne Sophie" was born December 16, 1888, to Kristina Pettersen and Samuel Svendsen (Exhibit No. 28). Fink also obtained hospital records for the Kristiania (Oslo) Maternity Clinic. The 1888 journal discloses that "Kristine Petersdotter," born in Venssaland (Sweden), age 26 and unmarried, had a daughter born alive on December 16, 1888. (Exhibit No. 30.) Exhibits Nos. 28, 29 and 30 were objected to at trial and on appeal are claimed to have been erroneously admitted. We therefore will treat them separately.

Setting aside temporarily the contested documents, Exhibits Nos. 28,

29 and 30, we conclude that the executor has sustained its burden of producing evidence which negated the *prima facie* case of heirship first established by Dobson's affidavit. The executor was not required to prove "non-heirship"; and Dobson has not furnished sufficient evidence to controvert the evidence that Dagney was not the daughter of Bernt Severson upon whose lineage her claim is based.

The executor came forward with proof that Bernt Severson was married to someone other than Dagney's mother at the time of Dagney's birth. The evidence clearly shows that Bernt Severson and Lisa Olava Olsen were married on July 7, 1878; that the family of Bernt included Lisa Olava Severson as his wife and four children in addition to Harald, but not including Dagney, as late as 1891; that Dagney was born prior to the 1891 census, December 16, 1888; that Bernt Severson's wife, Lisa, did not die until October 15, 1892; and that some time following her death and prior to the 1900 census Dagney and her mother, Kristine, moved into the Bernt Severson household and apparently lived there until Dagney's emigration in 1907. In addition, Dagney was never married, and used the last name of "Svendsen" as shown on the shipping list for the C.R. Tietgen on which she sailed to America. Also of significance was the letter from the immigration authorities informing Dagney that on her petition for citizenship she should have given her real name, inferentially, in place of the Severson name found on her declaration of intent. After the executor came forward with this clear proof that Bernt Severson was married to someone other than Dagney's natural mother at the time of Dagney's birth, the burden of persuasion on the issue of paternity by "clear and convincing evidence" (Ill. Rev. Stat. 1979, ch. 110½, par. 2—2) rested with Dobson as the claimant. (*In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 13; *In re Estate of Larimore* (1978), 64 Ill. App. 3d 470, 472.) Dobson was required to prove that Dagney's natural parents were Bernt Severson and Kristine Petterson, that Bernt and Kristine intermarried, and that Bernt acknowledged Dagney as his child. (*Miller v. Pennington* (1905), 218 Ill. 220, 224; *In re Estate of Waszkiewicz* (1963), 42 Ill. App. 2d 49, 61.) Or, in place of proving the intermarriage of Bernt and Kristine, that Bernt was her natural father. (*Morelli v. Battelli* (1979), 68 Ill. App. 3d 410, 415.) This she did not do on this record.

■■ We conclude that even without the introduction of Exhibits Nos. 28, 29 and 30 the trial court properly found that Dobson was not an heir of Dagney. If, of course, these exhibits were properly admitted they would make the case against Dobson even stronger by showing that her father was Samuel Svendsen and her mother Kristine and that they were not married. But even if these items are subtracted from the executor's case they do not add any strength to the proof required to have been produced

by Dobson when the executor clearly overcame the *prima facie* case presented in the original affidavit of heirship. We will, however, briefly consider the admissibility of these exhibits.

■■ The record is entitled as the Church Book for birth clinic for the Christiania Parish, recording matters that transpired in the late 1800's in Norway (Exhibit No. 29). We conclude that it was admitted properly pursuant to Supreme Court Rule 236 (73 Ill. 2d R. 236). The writing or record memorializing or recording any act made "in the regular course of business" at or within a reasonable time after the event is admissible without introducing all the circumstances to the making; and the hearsay nature of the entry affects its weight, not admissibility. "Business" is defined in the rule to include a "calling of every kind." We consider the rule broad enough to cover regular entries in church records. See Ill. Ann. Stat., ch. 110A, par. 236, Historical and Practice Notes, at 187 (Smith-Hurd Supp. 1981-82). See also Fed. R. Evid. 803(11).

The document appears to be a baptismal register and the entry as to "Dagny Sofie" reasonably appears to have been made in the regular course of church business; timely to the event recorded; and to be of the kind which the church regularly kept. It was found in the custody of a hospital priest who permitted the genealogical investigator to examine the entry. The church book covered the period from November 17, 1885, to May 26, 1890, inclusive. The year 1888 appears on the top of the page containing the entry for "Dagny Sofie." It bears the number 234; the entry beneath it, though lined out, clearly bears entry number 235. (In making a photocopy the priest blanked out other entries on the page that had no relation to Dagny.) The fact that the entry was dated (born-16th; baptized 23d) and numbered indicates that the entry was recorded in sequence. It thus appears that the church book is a register or record comprising in a single volume a series of homogenous statements recorded by entries made and regularly kept in official custody. (See 5 Wigmore, Evidence sec. 1636, at 646 (Chadbourn rev. ed. 1974).) The fact that the hand-writing of the entrant, presumably the clergyman now deceased, was not proved is an additional circumstance but affects the weight only. It may be noted in this connection that the writing in entries 234 and 235 appear to be in the same hand.

That the columnar entries containing the names of the parents are regularly kept is inferentially established by the column headings appearing in type at the top of the page of the register. The hearsay nature of this portion of the recording again affects its weight but not its admissibility pursuant to Supreme Court Rule 236. The case of *Dailey v. Brotherhood of R.R. Trainmen* (1924), 311 Ill. 184, 189, cited by Dobson, holds that a baptismal register is admissible only to show the fact, date and place of baptism. However, the conclusion is based on the reasoning that these

facts alone are within the personal knowledge of the clergyman. Under *Supreme Court Rule* 236(a) which post-dates such rulings, it would appear that all contents regularly kept of record by religious organizations would be admissible as an exception to the hearsay rule.

■■ The certified copy, entitled "Birth and Baptismal Certificate" (Exhibit No. 28), merely records the information found on Exhibit No. 29, and stands on the admissibility of the church register. See 5 Wigmore Evidence sec. 1677, at 862 (Chadbourne rev. ed. 1974).

Exhibit No. 30 is purportedly a hospital record containing personal history of the mother. Many of the facts contained in the exhibit are cumulative of other facts in evidence such as age and birthplace. The fact that the record designates the patient's marital status as "no" does not result in prejudicial error to Dobson, for she does not seriously dispute that in 1888 Bernt Severson was not married to Dagney's mother; this is confirmed by the 1890 census which listed Bernt Severson's wife as Lisa Olsen. While we agree that the legitimacy of Dagney was not a direct issue in the case, we find no prejudicial error.

The judgment of the trial court vacating the prior order of heirship and declaring the heirs of Dagney Severson to be unknown is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.