THE PEOPLE *ex rel.* AGNES MAE ADAMS, Plaintiff-Appellee, *v.*
TEVELL MITCHELL, Defendant-Appellant.

First District (4th Division)    No. 79-800

Opinion filed October 30, 1980.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and James L. McAuliff, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Following a jury trial the defendant, Tevell Mitchell, was found to be the father of a child born to plaintiff, Agnes Adams, on February 17, 1973. Judgment was entered on this finding and defendant was subsequently ordered to pay $30 per week for the support of the child. On appeal defendant contends: (1) at the hearing on defendant's motion to dismiss the complaint, based on the tolling of the two-year limitation period for such actions, the trial court erred in placing on defendant the burden of going forward with evidence to counter the allegations of estoppel contained in plaintiff's complaint; (2) the proof was insufficient to establish that defendant was the father of plaintiff's child.

Plaintiff filed a verified complaint on July 22, 1975, alleging that defendant was the father of Lauren Irene Mitchell, born to her on or about February 13, 1973. Defendant moved to dismiss the complaint on the ground that it was not filed within the two-year limitation period of the Paternity Act. (Ill. Rev. Stat. 1975, ch. 106¾, par. 54, now contained in Ill. Rev. Stat. 1979, ch. 40, par. 1354.) Subsequently plaintiff filed an amended complaint in which she alleged, *inter alia*, that she had not previously instituted a paternity action because defendant acknowledged the child was his and, at the time they separated, promised to continue to pay money toward the support of the child. Plaintiff also alleged that after they separated defendant did continue to pay a small sum of money each week toward the support of the child until April 1975.

At the hearing on defendant's motion to dismiss, the trial court[1] ruled, over defendant's objections, that the burden was on defendant to overcome the allegations of estoppel contained in plaintiff's amended complaint. Defendant called plaintiff as a section 60 witness. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) Plaintiff testified that defendant asked her to leave in May 1973. She denied that this was because the child was not his. Defendant gave her amounts of money ranging from $5 to $30. The last payment he made to her was for $30 in April 1975. She did not report this income on her tax return, nor did she inform her public aid caseworker. Plaintiff testified that she failed to report this income because it was not that significant. However she also testified that she needed it for her children. She explained that she did not file the paternity action earlier

---

[1] The hearing on this motion was not before the same judge who subsequently presided at the jury trial.

because defendant had been giving her support and it appeared they would be getting back together. After they had separated they again had sexual relations and the defendant promised several times to marry her.

After hearing this testimony and the arguments of counsel the trial court denied defendant's motion to dismiss.

Both plaintiff and defendant testified at trial. According to the plaintiff she met the defendant in 1971 and lived with him from May 1972 until May 1973. In June, July, and August of 1972 she had sexual relations with defendant twice a week. During the entire year she lived with him she had sexual relations only with him. In August 1972 she learned she was pregnant and so informed defendant. The child was born February 17, 1973. Defendant's insurance paid for the birth expenses. Defendant contributed to the support of the child on at least a monthly basis until April 1975. While living with defendant the plaintiff used the name Agnes Mitchell.

Plaintiff admitted that she had married Barry Adams in 1958. She was unable to provide any evidence that they were subsequently divorced. However she testified that at the time of trial (October 1978), she had not seen Adams in 10 years.

Defendant testified that he first met the plaintiff in August 1972 although he had "seen" her earlier. He first had sexual relations with her in late September 1972 and she moved in with him the following month. In December she told him she was pregnant. He did not believe the baby was his and continued living with plaintiff after the birth only because she had nowhere else to go. He had not authorized the insurance payments for the child, learning of them only after the fact. He paid support for the child until May 1973.

## I.

Defendant first contends that at the hearing on his motion to dismiss the complaint based on the two-year limitation period contained in the Paternity Act the trial court erred in placing on defendant the burden of going forward with evidence to counter the allegations of estoppel contained in plaintiff's amended complaint. We agree with this contention, but find no prejudice arising from the error and no basis for reversal because of it.

■■ Manifestly, plaintiff's complaint established that the two-year period had run prior to the filing of the complaint. It alleged that the child was born on February 17, 1973. The initial complaint was filed on July 22, 1975. Section 54 of the Paternity Act (Ill. Rev. Stat. 1975, ch. 106¾, par. 54, now contained in Ill. Rev. Stat. 1979, ch. 40, par. 1354) provides in pertinent part:

"No [paternity action] may be brought after the expiration of 2

years from the birth of the child. However, where the person accused has acknowledged the paternity of the child by a written statement made under oath or affirmation or has acknowledged the paternity of such child in open court, prosecution may be brought at any time within 2 years from the last time such acknowledgment was made or within 2 years from the last time the person accused contributed to the support, maintenance, education and welfare of the child subsequent to such acknowledgment. The time any person so accused is absent from the State shall not be computed."

In addition to the exception provided in the statute our supreme court has held that under the proper circumstances a defendant may be estopped from raising the limitation period as a defense:

"The test to be applied is both factual and legal. The trial court must determine after an evidentiary hearing whether defendant's conduct within two years of the child's birth significantly discouraged plaintiff from bringing suit until after the limitation period expired. Estoppel may be appropriate where defendant has acknowledged the child in an unambiguous statement in the presence of third parties, even though not under oath or in open court, or where defendant has significantly contributed to the support of the child. In either situation an action must still be brought within two years of the most recent statement or significant contribution." (*Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 88, 344 N.E.2d 447, 455.)

The court in *Cessna* did not address the question of who was to bear the burden of proof in this hearing, but we find this to be a settled question under general principles applicable to pleading statutes of limitation as bars to an action. It is the party seeking to avoid application or operation of the limitation period who has the burden of proving the facts which will establish his contention. (*Wilson v. LeFevour* (1974), 22 Ill. App. 3d 608, 317 N.E.2d 772; *People ex rel. Sides v. Johnson* (1920), 220 Ill. App. 212; 25 Ill. L. & Prac. *Limitations* §203 (1956).) Thus, in this cause it was the plaintiff who had the burden of establishing that defendant should be estopped from raising the limitation period as a bar to her action.

■■ ■ However, despite the erroneous ruling of the trial court on this issue, we find no basis for reversal arising from that ruling. Significantly, defendant has failed to contend that the evidence adduced at the hearing was insufficient to establish plaintiff's claim of estoppel, nor has he alleged that he was prevented by the ruling from adducing any evidence to counter her assertions. Plaintiff was called as a section 60 witness (Ill. Rev. Stat. 1977, ch. 110, par. 60) by defendant and was cross-examined by

the State. Her testimony was that following the birth of the child she continued living with the defendant until he asked her to leave in May 1973. After she left they did not live together again but they "got back together" and again began having sexual relations. In this period after their separation defendant asked her several times to marry him. Most importantly, from the birth of the child until April 1975 he made periodic payments to her for support of the child. These payments ranged in amount from $5 to $30; the last payment in April 1975 was for $30. In discussing why she failed to report these payments to her public aid caseworker or to the Internal Revenue Service plaintiff indicated that in that context she did not consider them that significant. But she also testified that she took the money without reporting it because she needed it for her child:

> "* * * I felt that what Mr. Mitchell was giving me was not enough to tell them about it. I had a child that used milk, Pampers and the, a little money I got, it just, it was just enough."

We find no basis for holding that these payments were not significant within the framework of the *Cessna* decision. In explaining its decision to allow estoppel claims to be raised against paternity action defendants asserting the two-year limitation period as a defense, the court in *Cessna* stated:

> "Plaintiffs who are considering suit against strangers are unlikely to be easily lulled into forfeiting a cause of action. In a paternity action, however, a mother must formally accuse a man with whom, at least for some period of time, she was emotionally involved. She would be understandably reluctant to file charges against a man during the time he voluntarily acknowledged and supported the child." (63 Ill. 2d 71, 87, 344 N.E.2d 447, 454.)

The plaintiff was asked at the hearing why she had delayed her prosecution of the action. She stated:

> "Well he was giving me, he was helping and then I was to the point that we was going to get back together again and get married because getting back together, if not getting married—The money was helping that he did give and that is why I filed and when he did stop giving it he said I could take him to court."

We find that under the standards articulated in *Cessna* the evidentiary hearing did establish a sufficient basis for estopping the defendant from raising the two-year limitation period as a defense. And although the burden of going forward with evidence at the hearing was incorrectly placed on the defendant, we find no prejudice to have arisen from that ruling.

## II.

Defendant's second contention is that the plaintiff failed to rebut the presumption that a child born in wedlock is legitimate, and therefore she failed to prove the defendant's paternity.

■■ At trial plaintiff testified that she was married to Barry Adams in 1958. She was unable to present any proof that she had subsequently been divorced. In Illinois a child born to a married woman is presumed to be legitimate. (*People ex rel. Smith v. Cobb* (1975), 33 Ill. App. 3d 68, 337 N.E.2d 313.) The presumption is not irrebuttable but it is a strong one; various courts have described the quantum of evidence needed to rebut it as "clear and convincing" (*Cobb*, 33 Ill. App. 3d 68, 70, 337 N.E.2d 313, 315), "strong, satisfactory and conclusive" (*Orthwein v. Thomas* (1887), 127 Ill. 554, 563, 13 N.E. 564, 566), and "clear and irrefragable" (*Orthwein*, 127 Ill. 554, 562-63, 13 N.E. 564, 566; *People ex rel. Gonzalez v. Monroe* (1963), 43 Ill. App. 2d 1, 6, 192 N.E.2d 691, 693). Some courts have held that in order to rebut the presumption it must be established that the husband was either inaccessible to the wife or sterile (*People ex rel. Gonzalez v. Monroe* (1963), 43 Ill. App. 2d 1, 192 N.E.2d 691; *Robinson v. Ruprecht* (1901), 191 Ill. 424, 61 N.E. 631), although it would appear that standard has been softened (see *People ex rel. Jones v. Schmitt* (1968), 101 Ill. App. 2d 183, 242 N.E.2d 275), where inaccessibility was found despite the fact that husband and wife lived in the same house at the time of conception. In any event, we hold that even under the strictest evidentiary requirement the evidence adduced in this cause by plaintiff was sufficient to overcome the presumption. Plaintiff testified that at the time of the hearing she had not even seen her husband in 10 years. She further testified that in the year she lived with defendant, from May 1972 to May 1973, she only had sexual intercourse with him. The jury as the trier of fact clearly accepted this testimony. That determination must be affirmed on review unless it was clearly and palpably erroneous. *People ex rel. Gomez v. Wedech* (1978), 58 Ill. App. 3d 518, 374 N.E.2d 849.

■■ Defendant appears to contend in his brief that the testimony of the plaintiff in itself could not as a matter of law suffice to overcome the presumption of legitimacy. This contention is apparently based on the assumption that the law in Illinois is that a wife cannot bastardize a child of hers born after marriage by testifying that she had no sexual relations with her husband at the time of conception. (See Annot., 49 A.L.R.3d 212 (1973).) Defendant has cited dictum in the case of *In re Ozment* (1978), 61 Ill. App. 3d 1044, 1047, 378 N.E.2d 409, 412, in which the court stated "* * * if we had had before us only the testimony of the mother of the child * * * we would be compelled to rule that a mother cannot illegitimatize her child and therefore her testimony alone would not be

sufficient to overcome the presumption of legitimacy. *(People ex rel. Gonzalez v. Monroe* (1963), 43 Ill. App. 2d 1, 192 N.E.2d 691.)" The court went on to note, however, that the wife's former husband and the putative father both testified that the putative father was the actual father of the child. In *Gonzalez* the issue was squarely joined, for the mother's paternity action was based primarily on her own testimony as to nonintercourse with her husband at the time of conception. The court stated, in finding that her testimony was not sufficient to rebut the presumption, "❋ ❋ ❋ our courts have held that a wife will not be allowed to make such statement as long as she is living with her husband." (43 Ill. App. 2d 1, 8, 192 N.E.2d 691, 694.) In the opinion the only case cited in support of this rule was *Vetten v. Wallace* (1891), 39 Ill. App. 390, 397, where the court stated the rule that "[f]or reasons of public decency and morality, a married woman cannot say she had no intercourse with her husband, and that her offspring is spurious." (Quoting 1 Greenleaf on Evidence §344.) What defendant has not noted is that the rule cited in *Vetten* was based on the fact that the Bastardy Act at that time only permitted unmarried women to prosecute paternity actions. (1871-1872 Ill. Laws 198-202.) As was subsequently noted in *People ex rel. Cullison v. Dile* (1931), 347 Ill. 23, 179 N.E. 93, when the statute was amended to remove the bar on suits by married women the rule no longer applied. (The rule also applied to husbands, and *Vetten* held that this condition was unchanged by the statute, but as can be seen by the *Gonzalez* case even that vestige of the rule is no longer in effect in this State.) We therefore find no support for defendant's contention that the testimony of the plaintiff could not in itself suffice to rebut the presumption.

■■ When the presumption of legitimacy has been overcome the remaining question of fact for the jury is whether the putative father is in fact the father. *(People ex rel. Smith v. Cobb* (1975), 33 Ill. App. 3d 68, 337 N.E.2d 313.) Again, defendant has not contended that plaintiff's evidence was insufficient on this point. In order to prevail plaintiff had to establish defendant's paternity by a preponderance of the evidence. *(People v. Rimicci* (1968), 97 Ill. App. 2d 470, 240 N.E.2d 195.) Plaintiff testified that at the time of conception she was living with the defendant. During that time she only had sexual relations with him. When the child was born defendant's insurance paid for the hospital expenses. Defendant himself testified that he paid all of their expenses from the birth until May 1973, when plaintiff moved out. Plaintiff also testified that defendant continued to pay her support money for the child until April 1975. Again it was for the jury to determine the credibility of the witnesses. They chose to accept this testimony and reject defendant's testimony that he did not have intercourse with plaintiff until September 1972, well after the period of possible conception of the child. We do not find the jury's determi-

nation to be manifestly erroneous and consequently we will not disturb it. The judgment of the trial court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.